IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| United States of America, ) | C/A No. 4:19-cr-978-DCC |
| ) | |
| v. ) | |
| ) | **OPINION AND ORDER** |
| Michael Quantrell Barr, ) | |
| ) | |

This matter comes before the Court on Defendant's First Supplemental Discovery Motion. ECF No. 36. The Government filed a Response in Opposition, and Defendant filed a Reply. ECF Nos. 52, 54. As set forth below, Defendant's Motion is granted.

## BACKGROUND

In November 2019, a Grand Jury returned an Indictment charging Defendant with the following counts: **(1)** possession with the intent to distribute and distribution of heroin on June 11, 2019; **(2)** possession with the intent to distribute and distribution of heroin on July 3, 2019; **(3)** possession with the intent to distribute and distribution of heroin on July 12, 2019; **(4)** possession of a firearm and ammunition by a prohibited person on July 18, 2019; **(5)** possession with the intent to distribute and distribution of heroin, marijuana, and cocaine base on July 18, 2019; and **(6)** possession of a firearm in furtherance of a drug trafficking crime on July 18, 2019. ECF No. 2.

On February 10, 2020, Defendant filed a *pro se* Motion to Substitute Attorney. ECF No. 32. Defendant's Motion voiced a general dissatisfaction with his counsel, and stated that his lawyer "has been keeping information from [him]." *Id.* The Motion was referred to Magistrate Judge Thomas E. Rogers, III, who held a hearing on February 13, 2020. ECF No. 35. During the hearing, Defendant agreed to proceed with his counsel and the Motion was denied. *Id.*

1

Thereafter, on February 28, 2020, Defendant filed a First Supplemental Discovery Motion. ECF No. 36. The Motion seeks "certain materials and information related to the confidential informant(s) who allegedly purchased narcotics from [Defendant]" as well as "a complete copy of any audiotape or videotape of the controlled drug buys which form the basis of Counts 1–3" of the Indictment. *Id.* Specifically, Defendant seeks the following information:

- Any reports, and/or handwritten notes by any law enforcement officer present at any interview when the informant(s) are debriefed about his/her/their knowledge of narcotics trafficking;

- A copy of any and all plea agreements executed by the informant(s);

- A copy of any and all proffers executed by the informant(s);

- A copy of any agreements, formal or informal, written or oral, between the informant(s) or the informant(s)'s counsel and any law enforcement entity or prosecuting authority;

- A written record of any consideration the informant(s) has been given by the state of South Carolina, the Government, or law enforcement agency as a result of the informant(s) activities in this case or any other case;

- A written copy of the informant(s)'s criminal record, to include, but not limited to, his/her/their prison and/or probation record, and NCIC report;

- A complete listing of any juvenile arrests and/or adjudications suffered by the informant(s);

- Any evidence about which the State of South Carolina, the Government, or any law enforcement entity has knowledge showing that the informant(s) engaged in past dishonesty;

- Any evidence or indication that the informant(s) may have or suffer from any cognitive or intellectual disability or mental health problem or physical impairment or medical issue, and/or drug addiction; and

- Any other acts the State of South Carolina, the Government, or any law enforcement entity has reason to know of that would affect the informant(s)'s reliability or credibility or trustworthiness.

*Id.* at 2.

A short time after the Motion was filed, the COVID-19 pandemic began to spread across the United States, and the District of South Carolina largely halted in-court proceedings. On May 20, 2020, Defendant filed a second *pro se* Motion to Substitute Attorney. ECF No. 42. Defendant stated that his lawyer was "not filing motions that [he] need[s] filed" and had been unsuccessful at getting a copy of the video(s) of the drug buys with the confidential informant(s). *Id.* Several days later, Defendant's counsel and the Assistant United States Attorney ("AUSA") contacted Chambers and asked the undersigned to enter a Consent Protective Order permitting the Government to disclose "multiple video files purporting to show the Defendant and a third party engaging in drug transactions" to Defendant's counsel. ECF No. 43. However, the Order prohibited Defendant's counsel from showing the videos to Defendant. *Id.*

On July 7, 2020, the Court held a Status Conference with Defendant related to his second Motion to Substitute Attorney and First Supplemental Discovery Motion. ECF No. 51. Defendant agreed to keep his current appointed counsel, and the Court directed Defendant's counsel to file a Status Report within 30 days indicating whether the attorney-client relationship is intact.[1] *Id.* Additionally, the Court directed the Government to file a Response to Defendant's First Supplemental Discovery Motion within 10 days. *Id.* The Government filed a Response in Opposition to Defendant's Motion on July 17, 2020, and the Court then directed Defendant to file a Reply within 7 days. ECF No. 53. In accordance with the Court's Order, Defendant filed a

---

[1] The Court has had the pleasure of presiding over cases in the Florence Division for more than two years and has worked with many criminal defense attorneys. While all of the attorneys the Court has observed have been professional, thorough, and well qualified, the Court notes that Defendant is represented by one of the most experienced and accomplished attorneys in the District of South Carolina—Assistant Federal Public Defender William F. Nettles, IV. Mr. Nettles' experience as an advisor and advocate is exceptional, and the Court commends both Defendant and Mr. Nettles for their rededication to working together in this case despite unusually difficult communication and visitation issues that are unavoidable during the COVID-19 pandemic.

Reply on July 27, 2020.  ECF No. 54.  Accordingly, Defendant's Motion has been fully briefed and is ripe for review.

**LEGAL STANDARD**

The Government has a "privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Rovario v. United States*, 353 U.S. 53, 59 (1957) (citations omitted). "The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement." *Id.* "The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." *Id.* "The scope of the privilege is limited by its underlying purpose," and, "where the disclosure of the contents of a communication will not tend to reveal the identity of an informer, the contents are not privileged." *Id.* at 60 (footnote omitted). "A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness." *Id.* "Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id.* at 60–61 (footnote omitted). In these situations the trial court may require disclosure and, if the Government withholds the information, dismiss the action." *Id.* at 61 (footnote omitted).

The Supreme Court has emphasized that the question of disclosure of the identity of a confidential informant does not lend itself to a bright line rule. *See id.* at 62. Instead, "[t]he problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense." *Id.* "Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.*

## DISCUSSION

In his Motion, Defendant noted that the Government initially proposed an arrangement where it would allow defense counsel, along with the defendant to view the videos at the United States Attorneys' Office. ECF No. 36 at 4. However, Defendant characterizes this proposed arrangement as "neither sufficient nor practical."[2] *Id.* First, Defendant notes that "watching the videos in the offices of the prosecutor will chill the free expression of ideas" between Defendant and his counsel. *Id.* Furthermore, Defendant states that "[i]f this case goes to trial, [Defendant's counsel] will need a copy of the video and audio in order to display relevant parts to the jury, if necessary." *Id.* at 5. Finally, Defendant points out an inherent contradiction in the Government's position in that, "[t]o the extent the Government argues that the safety of its informant is at stake[,] . . . [Defendant] will be able to detect the identity of the informant, whether it is viewed at the prosecutor's office or at the jail with defense counsel." *Id.*

In its Response, the Government now takes the position that it should not be required to disclose any of the requested materials until two weeks prior to a scheduled jury selection. ECF No. 52. The Government does acknowledge that the material *must* be produced; however, it contends that disclosure at this time is premature. Therefore, the only question before the Court is *when* the material must be produced. The Government offers the following justification for withholding the materials until two weeks before trial:

> Here, there are reasons to warrant a delay in the disclosure to the Defendant of the information sought until closer to trial, even if any such information were to contain potential *Brady* or *Giglio* information. The Task Force Officer ("TFO") with the Bureau of Alcohol, Tobacco, Firearms and Explosives in this case, who is also one of the designated gang officers for the Myrtle Beach Police Department, has indicated that Defendant is a documented member of the G-Shine set of the United Blood Nation gang, both of which the TFO indicated are known for acts of violence. In fact, the United States Attorney's Office for the

---

[2] The Court notes that the current state of the COVID-19 pandemic likely makes it impractical for Defendant and his counsel to view the videos at the United States Attorneys' Office.

> District of South Carolina recently prosecuted a case against defendants who were members of G-Shine in which the Government received information regarding a threat against a lead cooperator and information regarding intimidation of a witness. . . . The Government therefore submits that in light of the safety concerns because of Defendant's membership in a gang known for acts of violence and threats or intimidation against cooperating witnesses, disclosure to the Defendant of information related to the [CI] two weeks prior to jury selection is appropriate in this case. The Government submits that disclosure to Defendant two weeks prior to jury selection would be sufficient to provide for Defendant's effective use of the information at trial while simultaneously protecting the safety of the [CI] until a date closer to trial.

*Id.* at 6.

In his Reply, Defendant offers several additional arguments in support of the immediate production of the materials. First, Defendant notes that "the Government does not establish that gang members of the gang in which [Defendant] is purportedly involved communicated 'a threat' and/or participated in 'intimidation of a witness' in some unnamed case prosecuted in the District of South Carolina." ECF No. 54 at 3. Second, Defendant points out that there "are no allegations of violence" in this case, as the Indictment is "based upon a few specific drug transactions and a traffic stop in which it is alleged [Defendant] possessed a firearm and drugs." *Id.* at 4. Third, Defendant notes that the Government has produced other video evidence in this case from a traffic stop, which includes two identified lay witnesses. *Id.* To that end, Defendant argues that "[t]he Government has not communicated . . . any threats made by [Defendant] to these potential witnesses." *Id.* Finally, Defendant distinguishes the cases offered by the Government, many of which involve cases of extensive drug trafficking, witness intimidation, and violence. *Id.* at 4–6.

Given the breadth of the discovery sought by Defendant, the Court will discuss the disclosure of the videos and the remaining discovery separately. The Court turns first to disclosures of the videos.

7

**I. Audio and Video Recordings**

Initially, the Court notes that it appears the Government has changed its position on disclosure of the videos. As noted above, in Defendant's Motion, counsel represented that the "Government maintains that it will allow defense counsel, along with the defendant, to view [the videos] at the United States Attorneys' Office." ECF No. 36 at 4. Yet, in its Response, the Government now maintains that the videos need not be produced until two weeks before jury selection. While the COVID-19 pandemic has created obvious logistical difficulties in scheduling a meeting at the United States Attorneys' Office, the Court cannot conceive of any coherent explanation for the Government's change in position. Additionally, the Court agrees with Defendant that allowing Defendant and his counsel to view the videos at the United States Attorneys' Office obviates the Government's supposed safety concerns, as Defendant may be able to identify the confidential informant regardless of where he watches the videos. The Court acknowledges that the Government's current position is more logically consistent than its initial proposed arrangement; however, neither position is supported by the facts of this case.

The parties do not describe the contents of the video recordings of the purported drug buys in their filings. The Government acknowledges that "the confidential informant arranged controlled drug buys with the Defendant" and "made the purchases from the Defendant." ECF No. 52 at 2. The Court assumes that the confidential informant was outfitted with an audio and video recording device, which recorded the drug transactions. If this is true, that begs the question of whether the confidential informant can actually be seen during the videos.[3]

---

[3] The Court informally inquired about this issue with the counsel in this case. According to the Government, at least a portion of the confidential informant's face is visible in portions of the videos. However, given the absence of information in the parties' briefing, and in order to provide guidance to the parties in future cases, the Court will analyze the issue of production of the videos assuming alternatively that the confidential informant can be identified and cannot be identified.

8

Certainly, at a minimum, the Defendant may be able to ascertain the identity from the confidential informant's voice, names used during the transaction, context clues in the videos, or the dates of the transactions; however, the Government has not affirmatively indicated in its filings that the videos actually contain discernable, identifiable images of the confidential information. Although the Court will analyze the issue under both alternatives, the Court's conclusion as to the disclosure of the videos would be the same regardless of whether the confidential informant can be identified on the videos.

If the videos do not contain identifiable images of the confidential informant, the Court finds that the Government has no basis to withhold the videos from Defendant and his counsel. Under the controlling case law, the Government does not have a general privilege to withhold videos that do not disclose the identity of the confidential informant. *See Rovario*, 353 U.S. at 59 (holding that the Government has a "privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law" (citations omitted)). There may be a rare situation in other cases where a video that does not expressly identify the confidential informant may not be immediately discoverable;[4] however, the facts of this case militate decidedly in favor of disclosure.

To the extent the videos disclose the identity of the confidential informant, the Court must apply the balancing test enumerated by the Supreme Court in *Rovario*. This test "calls for balancing the public interest in protecting the flow of information against the individual's right to

---

[4] Because there is no privilege to withhold such a video when it does not identify the confidential informant, the Government must have credible and articulable reasons for seeking to withhold the video until immediately prior to a trial. In such a circumstance, the Government should contact the Court with detailed and well-supported evidence supporting its position and be prepared to discuss alternative means of allowing a defendant to access the discoverable information. For example, the Government could provide edited video clips, audio recordings, and redacted discovery that satisfies its *Brady* and *Giglio* obligations.

prepare the defense." *Id.* at 62. The inquiry is necessarily fact specific, and the Court must take "into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.*

In *McLawhorn v. State of North Carolina*, the Fourth Circuit addressed the balancing test enumerated in *Rovario*. 484 F.2d 1 (4th Cir. 1973). The Court noted, "[i]n determining whether invocation of the privilege of nondisclosure is to be sustained a distinction has frequently been made based on the nature of the informant's activities, that is, whether the informant is an active participant in the offense or is a mere tipster who supplies a lead to law enforcement officers to be pursued in their investigation of crime." *Id.* at 5 (footnote omitted). Applying this distinction, the Court held that "disclosure of the informant's identity is required where the informant is an actual participant, particularly where he helps set up the criminal occurrence." *McLawhorn v. State of North Carolina*, 484 F.2d 1, 5 (4th Cir. 1973).

Here, Defendant is charged with, *inter alia*, three substantive counts of selling controlled substances to a confidential informant. *See* ECF No. 2. This is not a case where a confidential informant provided information that merely aided the Government in charging a drug offense. Instead, the sale of controlled substances to the confidential informant forms the very basis of the charged substantive counts. Recognizing the importance of the confidential informant's involvement, the Government acknowledges that it "intends to call the confidential informant as a witness at trial." ECF No. 52 at 4. Therefore, under the relevant law, disclosure of the videos is required even if they reveal the identity of the confidential informant. This begets the question of *when* the Government must disclose the videos.

As detailed above, the Government proposes disclosure two weeks before trial. It provides no explanation or justification for this seemingly arbitrary deadline, and the Court

cannot endorse a blanket rule providing that all confidential informant related discovery is to be produced two weeks before trial. Just as the Court must undertake a case-specific approach to determining whether disclosure is required, so too must the Government adopt a flexible, case-specific approach to the timing of disclosure. There will be cases where disclosure close to trial does not prejudice the defendant; however, there will also be cases where delaying disclosure will be highly prejudicial. This case falls in the latter category.

Defendant has filed two Motions to Substitute Attorney in this case, indicating his dissatisfaction with his counsel's inability to show him a copy of the drug buys that form the basis of a large part of his Indictment. While the Court emphasizes that this is through no fault of Defendant's counsel, the Court sympathizes with Defendant's concerns. The reality of federal criminal practice is that most cases are resolved by way of guilty pleas. On June 11, 2019, the Pew Research Center released an analysis of data collected by the federal judiciary. John Gramlich, *Only 2% of federal criminal defendants go to trial, and most who do are found guilty*, Pew Research Center, https://www.pewresearch.org/fact-tank/2019/06/11/only-2-of-federal-criminal-defendants-go-to-trial-and-most-who-do-are-found-guilty/ (June 11, 2019). The analysis concluded that nearly 80,000 people were defendants in federal criminal cases in fiscal year 2018. *Id.* Despite the large number of cases, only 2% of cases went to trial, 90% resulted in guilty pleas, and the remaining 8% were dismissed. *Id.*

Most criminal cases proceed as follows: (1) a Grand Jury returns an Indictment or a Defendant waives Indictment and is charged by way of Information; (2) the Government gathers discovery from law enforcement agencies and produces the discovery to defendants; (3) defense counsel and the Government engage in plea negotiations; and (4) if plea negotiations are unsuccessful, the case proceeds to trial. One of the primary problems the Court has with the

Government's two-week rule is that it requires some defendants, such as the Defendant in this case, to negotiate blindly without being able to see the Government's evidence against him.

Indeed, under the Government's proposed rule, defense' attorneys would not even be provided with a copy of confidential informant videos until two weeks before jury selection.[5] In a single-defendant, substantive drug case like the one currently before the Court, it could potentially be ineffective assistance of counsel for an attorney to advise a defendant to plead guilty to substantive drug offense without examining the full spectrum of the Government's evidence. At a minimum, a defendant would have a colorable argument that his or her counsel was deficient for failing to pursue a copy of the video(s), though it is unlikely that most defendants would be able to demonstrate that any deficient performance was prejudicial.

Moreover, the Court has grave concerns about accepting a guilty plea when a defendant's counsel and the defendant have not been provided an opportunity to view the video(s) of drug buys. The Court has an obligation to ensure that guilty pleas are knowing and voluntary. How can a guilty plea be knowing and voluntary when a defendant is not provided access to a video recording of the alleged criminal conduct? In the heartland of simple, substantive drug cases, the Court has great trepidation in accepting a guilty plea when an attorney advises a defendant to enter a guilty plea without viewing all of the Government's evidence. Of course, this is not a blanket rule, as there will be cases where immediate disclosure is not justified due to specific, particularized, and compelling concerns such as protecting the safety of the confidential informant. The Court recognizes that the defendants bear the burden of rebutting the Government's qualified privilege to withhold the identity of a confidential informant; however,

---

[5] The Court commends the parties in this case for reaching a compromise during the pendency of Defendant's Motion so that Defendant's counsel could view the videos. However, the Consent Protective Order still deprived Defendant of the right to see the videos, and that is not acceptable under the circumstances of this case.

the Government must have a basis for withholding that information when it is directly relevant and necessary to the preparation of an individual's defense.

Here, the Government's sole justification for withholding the materials is that Defendant is a member of a large gang, which apparently has a reputation for intimidating or threatening witnesses. The Government did not provide any affidavits or declarations in support of their contention that Defendant is a gang member, nor did the Government outline any connections Defendant or his associates may have to individuals who have used violence or the threat of violence against witnesses in the past. This does not come near the detail necessary to rebut the Defendant's showing that the videos are necessary to prepare a defense of the case.

To be clear, the Court does not ascribe any malice or ulterior motives to the Government's position in this case. To the contrary, the Court has had many cases with the AUSA in this case and knows her to be an outstanding attorney with a well-deserved reputation for discretion, ethics, and competence. However, "[a]s former Attorney General and Supreme Court Justice Robert Jackson once noted, '[t]he prosecutor has more control over life, liberty and reputation than any other person in America.'" *Borzilleri v. Mosby*, 189 F. Supp. 3d 551, 558 (D. Md. 2016) (quoting Robert H. Jackson, *The Federal Prosecutor*, 24 J. Am. Judicature Soc. 18 (1940)). AUSAs "are given a tremendous amount of discretion over their duties—they choose which cases to investigate, which to charge, which to plead out, and which to bring to trial." *Id.* When an AUSA chooses to indict a single-defendant substantive drug case involving the sale of drugs to a confidential informant, the Court strongly encourages the Government to reflect upon the problems that belated disclosure of the video can cause with both the practical and legal aspects of a case. To be sure, in most cases, video recorded drug sales to a confidential

13

informant greatly increase the likelihood of a defendant's conviction. However, there may very well be a circumstance in a case where the video recording is exculpatory.

At bottom, the Court finds that the Government's justification for delaying production of the videos in this case is insufficient under the balancing tests articulated by the Fourth Circuit and the Supreme Court of the United States. To that end, the Court **VACATES** the parties' Consent Protective Order, ECF No. 43, to the extent it prohibits disclosure of the videos to Defendant. The Court acknowledges that COVID-19 provides a number of practical difficulties in Defendant's counsel being able to spend the time necessary to view the videos with Defendant. The Court has contacted the United States Marshals Service ("USMS") in the Florence Division, which proposed two alternatives to enable Defendant to view the videos. First, Defendant's counsel may bring a copy of the videos to the detention center at which Defendant is housed and may review the videos with Defendant at that location. The pitfalls to this approach are obvious—jail visitation is limited and social distancing is impractical in a jail setting. The second alternative provided by the USMS is that Defendant's counsel may review the videos with Defendant in one of the holding rooms at the Florence courthouse before or after the next pretrial hearing. The Court understands that this will necessitate a continuance so that Defendant and his attorney can thoroughly review and discuss the videos, and the Court will gladly accommodate a reasonable request for additional time.

### II. Remaining Discovery

Having determined that the videos must be immediately produced, the Court now turns to Defendant's remaining discovery requests. As detailed above and in Defendant's Motion, he seeks ten categories of information and materials related to the confidential informant. In sum and substance, Defendant primarily seeks a variety of impeachment materials pursuant to *Brady*

*v. Maryland*, 373 U.S. 83 (1963).  "It is axiomatic that the government has a constitutional duty to disclose to a defendant material exculpatory evidence."  *United States v. Jones*, 620 F. Supp. 2d 163, 168 (D. Mass. 2009) (citing *Brady*, 373 U.S. at 87).  "It has been long and clearly established that exculpatory evidence includes information that is potentially useful in impeaching government witnesses."  *Id.* (citing *Giglio v. United States*, 405 U.S. 150, 153–54 (1972)).

The Government acknowledges in its Response that the information Defendant seeks should be disclosed but contends that disclosure should occur two weeks prior to jury selection.  *See* ECF No. 52 at 4 ("Here, the Government does not dispute that disclosure is appropriate in this case where the confidential informant arranged and made controlled drug purchases from the Defendant, and where the Government intends to call the confidential informant as a witness at trial.").  For the reasons set forth above, the Court finds that immediate disclosure is appropriate under the unique circumstances of this case.  The Court again emphasizes that this Order should not be read as a blanket dictate that confidential informant related discovery should always be produced at once.  There will be circumstances where disclosure immediately prior to trial may be appropriate, either because of the limited role of the confidential informant in the Government's case-in-chief or particularized reasons related to the safety and protection of the confidential informant.  Here, however, Counts One, Two, and Three stem directly from Defendant's purported sale of drugs to the confidential informant.  Given the central role the confidential informant will have at Defendant's trial, the Court directs the Government to produce responsive information to Defendant's discovery requests as soon as practicable.  This disclosure is subject to any exceptions found in Federal Rule of Criminal Procedure 16.  *See, e.g.,* Fed. R. Crim. P. 16(a)(2) ("[T]his rule does not authorize the discovery or inspection or

reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case. Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500.").

The information disclosed and the videos disclosed pursuant to the discussion above are subject to the Court's Standing Order Governing Discovery. *See* ECF No. 9. To that end, Defendant's counsel may review the information with Defendant; however, Defendant is not permitted to retain or copy any of the discovery. The Court will afford Defendant and his counsel ample time to review the discovery either at the detention center or at the Federal Courthouse during the next scheduled court appearance. In the event there is a dispute about whether any specific information should be disclosed, the Government is directed to contact Chambers and provide a copy of the information for an *in camera* review.

## CONCLUSION

For these reasons, Defendant's First Supplemental Discovery Motion, ECF No. 36, is **GRANTED**. The Consent Protective Order, ECF No. 43, is **VACATED**.

IT IS SO ORDERED.

                s/ Donald C. Coggins, Jr.
                United States District Judge

August 7, 2020
Spartanburg, South Carolina